```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
```

CARI JO CHURCH,

                Plaintiff,

vs.                                          Case No. 15-1019-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I.   General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On June 25, 2013, administrative law judge (ALJ) Rhonda Greenberg issued her decision (R. at 19-33). Plaintiff alleges that she had been disabled since November 5, 2010 (R. at 19). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2016 (R. at

21). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 21). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 21). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 23). After determining plaintiff's RFC (R. at 24), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 31). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 31-32). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 33).

**III.  Did the ALJ err in its consideration of the medical opinion evidence pertaining to plaintiff's postural limitations?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other

medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating

source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

According to SSR 85-15, stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any king of work. SSR 85-15; 1985 WL 56857 at *7. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply. SSR 96-9p, 1996 WL 374185 at *8. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S.

Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). Furthermore, at the hearing in this case, the vocational expert (VE) testified that a person with no ability to stoop, which he defined as a degree of bending, would eliminate competitive work (R. at 67).

On May 20, 2011, Dr. Weimar, a treating physician, filled out a work release form indicating that plaintiff could return to work on June 1, 2011 with numerous limitations, including a limitation of no kneeling, squatting, stooping, crawling or climbing. The form indicated that the restrictions are for a period of 4 weeks; thereafter, restrictions may be gradually lifted, but only as tolerated by the patient (R. at 372). These RFC restrictions were not mentioned or discussed by the ALJ.

On July 2, 2012, Dr. Scheufler, another treating physician, opined that plaintiff was incapable of performing sedentary work (R. at 588), and included in his restrictions no lifting, bending,[1] or prolonged standing or sitting (R. at 589). The ALJ gave this opinion little weight (R. at 30). The ALJ erroneously stated that Dr. Scheufler did not provide specific functional limitations (R. at 29). However, no lifting, bending or prolonged standing or sitting are specific functional limitations. Thus, the ALJ failed to address the specific functional limitations set forth by Dr. Scheufler.

---

[1] As noted above, stooping is defined as bending the body downward and forward by bending the spine at the waist. SSR 85-15, 1985 WL 56857 at *7.

On December 28, 2012, Dr. Bleazard performed a detailed consultative examination on the plaintiff (R. at 630-639). After examining plaintiff, Dr. Bleazard opined that plaintiff could never balance, stoop, kneel, crouch or crawl. Dr. Bleazard stated that this finding was based on the fusions performed on the plaintiff (R. at 637). As noted by the ALJ, fusion surgery was performed on the plaintiff on November 2010 and October 2011 (R. at 26, 346, 457). The ALJ gave more weight to the opinion of Dr. Bleazard, but went on to say that his opinion regarding no stooping was not supported by the evidence of record (R. at 30). In fact, the ALJ's RFC findings agreed with Dr. Bleazard that plaintiff could not balance, kneel, crouch or crawl; the only postural limitation which the ALJ disagreed on was stooping when the ALJ found that plaintiff could frequently stoop (R. at 24). However, the ALJ failed to identify what evidence did not support Dr. Bleazard's opinion that plaintiff could not stoop. The only other medical RFC opinion in this case was that of Dr. Hitchcock, who did not treat or examine plaintiff, but only reviewed the medical records, and he opined that plaintiff could only occasionally stoop (R. at 97). Furthermore, his opinion was rendered on June 11, 2012, and thus did not take into account the opinions of Dr. Scheufler (whose opinion was dated July 2, 2012) or Dr. Bleazard (whose opinion was dated December 28, 2012). Thus, the finding

9

of the ALJ that plaintiff could frequently stoop is contrary to all of the medical opinion evidence, and the ALJ fails to cite to any specific evidence in support of that finding.

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule was recently described as a "well-known and overarching requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). According to SSR 96-8p:

> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence

10

that he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion. Knight v. Astrue, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010).

The ALJ erred by stating that Dr. Scheufler did not provide specific functional limitations; in fact, Dr. Scheufler opined that plaintiff could perform no lifting, bending,[2] or prolonged standing or sitting. The ALJ further erred by failing to consider Dr. Scheufler's specific functional limitations.

On the facts of this case, the court finds that the ALJ also erred by failing to consider the opinion of Dr. Weimar that plaintiff could not stoop. Although that opinion only included that restriction for 4 weeks, it further stated that such restrictions "may be **GRADUALLY** lifted, but only as tolerated by the patient" (R. at 372, emphasis in original). Plaintiff alleged disability as of November 5, 2010. Dr. Weimar opined that plaintiff could not stoop on May 20, 2011. Dr. Scheufler then opined on July 2, 2012 that plaintiff could engage in no bending. Finally, Dr. Bleazard opined on December 28, 2012 that plaintiff could not stoop, basing his opinion on plaintiff's

---

[2] As noted above, stooping means a degree of bending or bending at the waist).

11

fusion surgeries, which were performed on November 2010 and October 2011. Thus, Dr. Weimar's opinion must be considered in light of the fact that it states that such restrictions may be gradually lifted only as tolerated by the patient, and the subsequent medical opinions by treating and examining physicians that also found that plaintiff could not stoop.

Therefore, on remand, the ALJ must consider the opinions of Dr. Weimar, a treating physician, regarding plaintiff's inability to stoop, as set forth above. The ALJ must also consider the specific functional limitations set forth by Dr. Scheufler, another treating physician. Furthermore, the opinions of Dr. Bleazard regarding plaintiff's inability to stoop must be examined in light of the opinions of her two treating physicians. Finally, the opinions of Dr. Hitchcock must be considered in light of the fact that he neither treated or examined plaintiff, and in light of the fact that he offered his opinions prior to the opinions offered by Dr. Scheufler and Dr. Bleazard.

**IV.  Did the ALJ err in his consideration of plaintiff's mental limitations?**

After the ALJ decision, plaintiff provided to the Appeals Council a report from Dr. Schell, a psychologist (R. at 710-715). The Appeals Council admitted this information into the record (R. at 4), but found that this information did not

provide a basis for changing the ALJ's decision (R. at 2). Plaintiff argues that the ALJ failed to provide specific, legitimate reasons for rejecting Dr. Schell's opinions.

Plaintiff's challenge is without merit. The case law requires only that the Appeals Council consider properly submitted evidence that is new, material, and temporally relevant. If, as happened here, the Appeals Council explicitly states that it considered the evidence, there is no error, even if the order denying review includes no further discussion. The court takes the Appeals Council at its word when it declares that it has considered a matter. Martinez v. Astrue, 389 Fed. Appx. 866, 868-869 (10th Cir. Aug. 3, 2010). While an express analysis of the Appeals Council's determination would have been helpful for purposes of judicial review, claimant pointed to nothing in the statues or regulations that would require such an analysis where new evidence is submitted and the Appeals Council denies review. Martinez v. Astrue, 444 F.3d 1201, 1207-1208 (10th Cir. 2006); see Bowles v. Barnhart, 392 F. Supp.2d 738, 743-745 (W.D. Va. 2005)(which provides a thorough and persuasive analysis of the reasons that the Appeals Council does not have to provide substantive explanations when they deny review).

However, as this case is being remanded, the ALJ should consider the evidence from Dr. Schell, and make a new mental RFC assessment after considering all the medical and other evidence

13

pertaining to plaintiff's mental RFC.  Plaintiff has also raised the issue of the weight accorded by the ALJ to various medical opinions and other evidence in making his mental RFC findings, but the court will not address this issue because it may be affected by the ALJ's resolution of the case on remand after considering the opinion evidence from Dr. Schell.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 12th day of January 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge